IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DIYANA MATHIS, | ) |
|    Plaintiff, | ) Case No. 3:25-cv-00___-RAH-CWB |
| | ) |
| v. | ) |
| | ) |
| TRANS UNION LLC, | ) |
|    Defendant. | ) |

# EXHIBIT C

## CFPB DISPUTES AND
## TRANS UNION RESPONSES

CFPB Complaint No. 251208-26635675 (December 8, 2025)
TU Response: January 14, 2026 (37 days) - "ACTIVE DISPUTE" - No corrections

CFPB Complaint No. 251227-27213175 (December 26, 2025)
TU Response: January 28, 2026 (33 days) - "ACTIVE DISPUTE" - No corrections

CFPB Complaint No. 251227-27213236 (December 26, 2025)
TU Response: January 26, 2026 - "LITIGATION INVOLVED" - Refused to investigate

CFPB Complaint No. 251227-27213448 (December 26, 2025)
TU Response: January 28, 2026 - Burden-shifting: "contact the company directly"

**Four disputes. Zero corrections. Escalating noncompliance.**

*Filed pursuant to the Court's Order dated February 19, 2026 (Doc. 32)*

 An official website of the United States Government

 **Consumer Financial Protection Bureau**
(https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 251208-26635675

**CLOSED**

## ✅ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/8/2025 | Credit reporting or other personal consumer reports | Incorrect information on your report |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am filing this complaint against TransUnion LLC for publishing a materially inaccurate and incomplete credit report concerning my federal student loan tradelines serviced by Nelnet on behalf of the Department of Education. TransUnion's credit report dated July 17, 2025 (TransUnion File #461640641) contains systematic violations of the Fair Credit Reporting Act's "maximum possible accuracy" requirement under 15 U.S.C. § 1681e(b), the CARES Act credit reporting mandate under Section 3513(d), and the industry's own Metro 2® Credit Reporting Resource Guide standards. The violations fall into three categories: (1) TransUnion published delinquency codes (90 and 120 days late) during periods when my loans were in deferment and no payments were due, including during the CARES Act administrative forbearance period when the law required loans be reported as current; (2) TransUnion systematically omitted all four core monetary fields (Current Balance, Amount Past Due, Scheduled Monthly Payment Amount, and Actual Payment Amount) for over 50 consecutive months while simultaneously reporting fluctuating payment status codes, rendering the report internally inconsistent and materially misleading to any reasonable user; and (3) this false information was published to multiple creditors who made hard inquiry credit decisions based on materially inaccurate data, causing concrete financial and emotional harm. SPECIFIC FACTS: My TransUnion credit report shows three DEPT OF ED / NELNET student loan tradelines (account numbers ending in 51251, 51251, and 52134). From August 2018 through December 2022—a period spanning over 50 consecutive months—TransUnion reported all four monetary fields as blank dashes ("---") rather than zero-filled as required by Metro 2® Programming Standards. During this same period, the Payment Rating field actively changed between "X" (Unknown), "OK" (Current), "90" (90 days late), and "120" (120+ days late), proving TransUnion was actively updating these tradelines while suppressing every associated dollar figure. Critically, TransUnion reported me as 90-120 days delinquent from August 2019 through February 2020. However, official Nelnet/Department of Education servicer records prove this is false. My Nelnet Payment Schedule document (generated December 8, 2025 from nelnet.studentaid.gov) confirms: (a) my loans have a "Repayment Begin Date" of April 22, 2019 but a "Schedule Begin Date" of February 8, 2025, meaning no scheduled payments were due between those dates; (b) "Interest Paid as of 01/09/2025: $0.00" confirming zero payment activity; and (c) my Nelnet Payment Activity screen explicitly states "No payments have been made to your Nelnet-serviced account at this time" and "You don't have any payment history at this time." These servicer records prove I could not have been 90-120 days late on payments that were never scheduled or due. CARES ACT VIOLATIONS: Section 3513(d) of the CARES Act (H.R. 748, enacted March 27, 2020) explicitly mandates: "During the period in which the Secretary suspends payments on a loan under subsection (a), the Secretary shall ensure that, for the purpose of reporting information about the loan to a consumer reporting agency, any payment that has been suspended is treated as if it were a regularly scheduled payment made by a borrower." This means from March 2020 through the end of the COVID-19 administrative forbearance period (September 2023), my federal student loans should have been reported as CURRENT with on-time payments. Instead, TransUnion's report shows blank monetary fields throughout this period, no deferment coding to indicate administrative forbearance status, and a Rating of "X" (Unknown) for 17 consecutive months during the PDE period. TransUnion's failure to accurately report CARES Act forbearance status violates both federal law and the "maximum possible accuracy" standard under FCRA § 1681e(b). METRO 2® VIOLATIONS: TransUnion's reporting violates the Credit Reporting Resource Guide (CRRG 2023), the industry standard published by the Consumer Data Industry Association that TransUnion itself helped develop. The CRRG Programming Standards (Page 3-4) explicitly require: "Every numeric field is right-justified and zero filled," "If a numeric field is not available, it should be zero filled," and "If a monetary field is not applicable, it should be zero filled." The CRRG further warns in bold text: "Any deviation from these standards jeopardizes the integrity of the data." TransUnion

deviated from these standards by leaving Fields 15, 16, 21, and 22 blank for over 50 months. Field 21 (Current Balance) is marked "Y" (Always Required) in the Base Segment layout, yet TransUnion left it blank on open, interest-accruing student loans with principal balances of $3,500 and $6,783.98. CONCRETE HARM - HARD INQUIRIES BASED ON FALSE INFORMATION: TransUnion published this materially inaccurate credit file to multiple creditors who made hard inquiry credit decisions based on false information. My TransUnion report shows the following hard inquiries during the period when my credit file contained false delinquency codes and blank monetary fields: (1) CAPITAL ONE, Richmond VA, requested 05/19/2024; (2) FAMILY SECURITY CREDIT UNION, Decatur AL, requested 12/29/2023; (3) FIRST PREMIER BANK, requested 12/27/2023; (4) ALLY FINANCIAL, Bloomington MN, requested 11/30/2023; (5) HUNTINGTON BANK, Louisville KY, requested 11/30/2023; and (6) NCCPERKINS MOTOR PLEX, Mayfield KY, requested 11/30/2023 (permissible purpose: Credit Transaction). Each of these creditors received a TransUnion credit report containing false 90-120 day delinquency codes on student loans where no payments were due, blank monetary fields, and missing CARES Act forbearance coding. I am not disputing the permissible purpose of these inquiries; I am disputing that these creditors received false information upon which they based their decisions. Any adverse decisions resulting from this false information constitute concrete financial harm directly caused by TransUnion's inaccurate reporting. EMOTIONAL HARM: Beyond the financial harm, I have suffered significant emotional distress as a result of TransUnion's inaccurate reporting. Discovering that my credit file contained false delinquency codes for loans on which no payments were due has caused me substantial anxiety, frustration, and stress. The realization that multiple creditors made decisions about my creditworthiness based on demonstrably false information has been deeply distressing. I have experienced embarrassment when applying for credit, uncertainty about whether past credit decisions were adversely affected, and the ongoing stress of having to investigate and dispute these inaccuracies. The burden of proving that a major credit reporting agency published false information—including having to obtain and analyze official Department of Education servicer records, Metro 2® industry standards, and CARES Act provisions—has required significant time and emotional energy. LEGAL STANDARD: Under FCRA § 1681e(b), consumer reporting agencies must "follow reasonable procedures to assure maximum possible accuracy" of consumer reports. The Eleventh Circuit has held that reports can be "inaccurate" under FCRA when they are materially incomplete or misleading. See Erickson v. First Advantage Background Services Corp., 981 F.3d 1246 (11th Cir. 2020); Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017). The Seventh Circuit has held that "the omission of information from a credit report can render the report inaccurate or misleading" when it "adversely affect[s] the consumer's creditworthiness in a material way." Chaitoff v. Experian Info. Solutions, Inc., 83 F.4th 596 (7th Cir. 2023). Additionally, CARES Act § 3513(d) created a mandatory credit reporting obligation for federal student loans in administrative forbearance, which TransUnion failed to implement accurately. REQUESTED RELIEF: I request that the CFPB: (1) investigate TransUnion's systematic failure to report required Metro 2® monetary fields on federal student loan tradelines; (2) require TransUnion to correct my credit file by removing the false delinquency codes from August 2019 – February 2020 and populating all required monetary fields with accurate data from Nelnet/Department of Education records; (3) investigate whether the hard inquiries listed above should be removed or the creditors notified that their credit decisions were based on false information, so that those decisions can be reconsidered; (4) determine whether TransUnion's blank-field reporting pattern and CARES Act compliance failures affect other consumers with federal student loans; and (5) take appropriate enforcement action for TransUnion's violations of FCRA § 1681e(b) and the CARES Act § 3513(d). I have attached supporting documentation including my TransUnion credit report, Nelnet Payment Schedule, Nelnet Payment Activity screenshot, the CARES Act text, and relevant excerpts from the CDIA Credit Reporting Resource Guide 2023.

**ATTACHMENTS**

| Hard Inquiry Evidence Excerpt.pdf (20.4 KB) | DiYana_October_2025_Statement_Chime.pdf (58 KB) | Diyana (front of license).jpg (239.2 KB) | DIYANA EVIDENCE FILE.docx (15.5 KB) | Diyana Mathis TransUnion Credit Report (2).pdf (1.3 MB) | DIYANA STUDENT LOAN NO PAYMENTS.png (60.1 KB) | Cares 3513(d) Evidence Excerpt For Cfpb.pdf (12.2 KB) |

View full complaint ⊖

✓ **Sent to company**

**STATUS**
Sent to company on 12/8/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

✓ **Company still working**

**STATUS**
Company response is in progress as of 12/9/2025

**The company has responded that it is still working on your issue**

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we

2/27/26, 9:26 PM                                          Complaint Detail

sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We received your complaint about the items in your credit report, and apologize for any difficulty you may have experienced. We are currently reviewing your complaint along with the information you previously submitted regarding this issue. We will follow-up with you within sixty (60) days from the date you submitted your request.

## Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 1/14/2026 | Closed with non-monetary relief |

### Company's Response

After careful review, we have determined the information submitted in the portal included a dispute of information appearing on your credit report.

**DESCRIPTION OF NON-MONETARY RELIEF**

In response to your request, the following actions were taken on your credit file: You disputed the following Personal Information on your credit file. Below includes the actions taken: Address - UPDATED You disputed the following accounts and/or public records on your credit file. Below includes the results of that investigation. DEPT OF ED / NELNET-ACTIVE DISPUTE (3) PORTFOLIO RECOVERY-ACTIVE DISPUTE CHIME STRIDE BANK-ACTIVE DISPUTE Other miscellaneous actions take based on your request were: Opt out - ADDED

## Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 1/14/2026 | 3/15/2026 |

### Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

Submit your feedback

## Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

Complaint Detail

More than 180 languages available.

An official website of the United States Government

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 All complaints (.)

# 251227-27213175

CLOSED

## ✅ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/26/2025 | Credit reporting or other personal consumer reports | Incorrect information on your report |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am filing this complaint against TransUnion for reporting objectively false, internally contradictory, and materially incomplete data on three federal student loan accounts appearing on my TransUnion credit report dated July 17, 2025, File Number 461640641. All three accounts are reported by Department of Education/Nelnet and contain multiple categories of Metro 2 field-level violations that are verifiable on the face of the report without need for external documentation. The three accounts at issue are account number 90000051251 opened September 22, 2015 with original loan amount of $3,500 and current balance of $3,909, account number 90000051251 opened September 22, 2015 with original loan amount of $2,000 and current balance of $2,540, and account number 90000052134 opened March 14, 2016 with original loan amount of $4,000 and current balance of $5,035. The combined balance across all three accounts is $11,484. The first hard inaccuracy is a Metro 2 Field 18 violation involving the Last Payment Date field. All three accounts report Last Payment Made as August 8, 2023 on a credit report dated July 17, 2025. This represents a 23-month temporal gap between the reported last payment date and the current reporting period. Metro 2 Field 18 requires furnishers to report the date of the most recent payment activity. Per the Consumer Reporting Resource Guide, this field should be updated when payment activity occurs or should be blank or zero-filled if no payments have been received during the account history. Reporting a static 23-month-old payment date across 23 consecutive monthly reporting cycles while simultaneously reporting changing balance amounts creates an internal data contradiction. The balance on account 90000051251 increased from $3,634 in January 2023 to $3,909 in June 2025, yet the Last Payment Date remains frozen at August 8, 2023 for every single monthly reporting period. This pattern repeats across all three accounts representing 69 total instances of temporally impossible data. The Consumer Financial Protection Bureau recognizes that credit reports must contain accurate information and that data contradictions affecting multiple fields represent systematic procedural failures. The second hard inaccuracy is a Metro 2 Field 17A violation involving the Account Status field. All three accounts report a Rating of X which TransUnion defines as Unknown for 17 consecutive months from January 2024 through May 2025. During this same period, the furnisher simultaneously reported specific balance amounts, the PDE remark code indicating Payment Deferred, and $0 scheduled payment amounts. Metro 2 Field 17A requires furnishers to report a valid Account Status code for each reporting period. Valid codes include Current, Deferred, or specific delinquency codes. The code X for Unknown should only be used when the account status genuinely cannot be determined. Reporting Unknown status while simultaneously reporting PDE deferment status, specific monthly balance amounts, and $0 scheduled payments is internally contradictory. If the furnisher possessed sufficient information to report deferment status and balance changes, the account status was definitionally not unknown. This represents 17 months multiplied by 3 accounts equaling 51 total instances of contradictory Account Status reporting. The third hard inaccuracy is a Metro 2 Field 19 violation involving the Special Comment Code field and constitutes a material omission under Chaitoff v. Experian. All three accounts show identical payment history patterns transitioning from 120 days past due in February 2020 to Current status in March 2020 with no Special Comment Code explaining this transition. The payment history shows 90 days past due in August 2019, 120 days past due from September 2019 through February 2020, and then suddenly Current status beginning March 2020. A transition from 120 days delinquent to current status does not occur without intervening action such as rehabilitation, modification, or forbearance. Under Metro 2 standards, such transitions require Special Comment Codes to explain how the account became current. If the accounts were rehabilitated, code AH should appear. If the accounts were modified under a federal program, code CN should appear. If the accounts entered forbearance, code CP should appear. The only remark code present is PDE which began appearing in January 2024 and indicates current deferment status. PDE does not explain how accounts that were 120 days delinquent in

February 2020 suddenly became current in March 2020. Under the Chaitoff v. Experian framework established by the Seventh Circuit Court of Appeals in 2023, omitting material context that explains payment patterns creates a misleading impression of a much greater degree of financial irresponsibility. The absence of any explanatory Special Comment Code for three accounts simultaneously transitioning from severe delinquency to current in the same month constitutes a material omission that adversely affects my creditworthiness. The fourth hard inaccuracy is a complete data gap for January 2025. All three accounts show complete data for December 2024 including balance, past due amount, scheduled payment, remarks, and rating. All three accounts show complete data for February 2025. However, January 2025 shows blank entries indicated by dashes for Balance, Past Due, Amount Paid, Scheduled Payment, and Remarks on all three accounts. The Rating field shows X for Unknown. This represents a complete data gap in the middle of an otherwise continuous reporting history across all three accounts indicating a systemic furnisher reporting failure that TransUnion failed to detect or remediate. Under 15 U.S.C. § 1681e(b), consumer reporting agencies must follow reasonable procedures to assure maximum possible accuracy. The 69 instances of temporally impossible Last Payment Date data, the 51 instances of contradictory Unknown status reporting, the material omission of Special Comment Codes on 3 accounts, and the complete data gap for January 2025 on 3 accounts demonstrate that TransUnion's procedures are inadequate to assure maximum possible accuracy as required by statute. I request that TransUnion conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a) addressing each Metro 2 field violation identified in this complaint. I request correction of Field 18 Last Payment Date to reflect accurate payment activity or blank if no payments were received. I request correction of Field 17A Account Status to report valid status codes instead of Unknown for periods where detailed account data was reported. I request addition of the appropriate Field 19 Special Comment Code explaining the February 2020 to March 2020 transition from 120 days delinquent to current status on all three accounts. I request investigation and correction of the January 2025 data gap on all three accounts. If these Metro 2 field violations cannot be verified and corrected, I request deletion of all three student loan tradelines under 15 U.S.C. § 1681i(a)(5)(A) which requires deletion of information that is inaccurate, incomplete, or cannot be verified. I am attaching my TransUnion credit report dated July 17, 2025 and a detailed Metro 2 Technical Audit documenting each field-level violation as supporting documentation.

**ATTACHMENTS**

DiYana_October_2025_Statement_Chime.pdf (58 KB)

DIYANA_MATHIS_TRANSUNION_STUDENT_LOAN_AUDIT.docx.pdf (230.8 KB)

Back of license).jpg (182.6 KB)

Diyana Mathis_TransUnion Credit Report.pdf (1.3 MB)

Diyana (front of license).jpg (239.2 KB)

View full complaint ⊕

✔ **Sent to company**

**STATUS**

Sent to company on 12/26/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

✔ **Company still working**

**STATUS**

Company response is in progress as of 12/27/2025

**The company has responded that it is still working on your issue**

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We received your complaint about the items in your credit report, and apologize for any difficulty you may have experienced. We are currently reviewing your complaint along with the information you previously submitted regarding this issue. We will follow-up with you within sixty (60) days from the date you submitted your request.

2/27/26, 9:26 PM                                                        Complaint Detail

## ✓ Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 1/28/2026 | Closed with non-monetary relief |

### Company's Response

After careful review, we have determined the information submitted in the portal included a dispute of information appearing on your credit report.

**DESCRIPTION OF NON-MONETARY RELIEF**

In response to your request, the following actions were taken on your credit file: You disputed the following accounts and/or public records on your credit file. Below includes the results of that investigation. DEPT OF ED / NELNET-ACTIVE DISPUTE (3) PORTFOLIO RECOVERY-ACTIVE DISPUTE

## ⊡ Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 1/28/2026 | 3/29/2026 |

### Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

Submit your feedback

## ✗ Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

.

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

▧ An official website of the United States Government

2/27/26, 9:24 PM                                                                                    Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 ❮ All complaints (.)

# 251227-27213236

CLOSED

✅ **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/26/2025 | Credit reporting or other personal consumer reports | Incorrect information on your report |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am filing this complaint against TransUnion for reporting materially incomplete and unverifiable data on a collection account reported by Portfolio Recovery Associates appearing on my TransUnion credit report dated July 17, 2025, File Number 461640641. The account number is 517805968851 with a balance of $450 and original creditor listed as Capital One N A. This account contains multiple Metro 2 field-level violations that render the tradeline unverifiable and materially incomplete under the Fair Credit Reporting Act. The first hard inaccuracy involves the Date of First Delinquency which is not displayed on my credit report. TransUnion shows Estimated month and year this item will be removed as September 2029 but does NOT display the actual Date of First Delinquency used to calculate this removal date. Under 15 U.S.C. § 1681c(c)(1), the running of the seven-year reporting period begins on the date of the commencement of the delinquency which immediately preceded the collection activity. Consumers have a statutory right to verify the accuracy of the DOFD because it determines when negative information must be removed from their credit file. Working backwards from the September 2029 removal date, the implied DOFD would be approximately September 2022. However, my Equifax credit report for this same Portfolio Recovery Associates account explicitly states Date of First Delinquency as October 27, 2022 with removal scheduled for July 2029. This creates a cross-bureau discrepancy of 2 months between TransUnion reporting September 2029 removal and Equifax reporting July 2029 removal. If the DOFD is October 27, 2022 as stated by Equifax, the seven-year removal date should be approximately October 2029, not September 2029 as implied by TransUnion. This discrepancy demonstrates that at least one credit bureau is reporting an inaccurate DOFD-derived removal date. Without TransUnion displaying the actual DOFD, I cannot verify which bureau is correct. The second hard inaccuracy involves Metro 2 Field 31 which requires the Original Account Number. The tradeline reports Original Creditor as Capital One N A but does NOT report the Original Account Number from the Capital One account. Under Metro 2 reporting standards, when a debt is purchased or transferred, the acquiring entity must report the original creditor's account number in Field 31 to enable consumer verification. Without this field, I cannot verify that this $450 debt reported by Portfolio Recovery Associates corresponds to any account I actually had with Capital One. Under Chaitoff v. Experian established by the Seventh Circuit Court of Appeals in 2023, a credit report is inaccurate if it omits accurate information that could reasonably be expected to adversely affect credit decisions. The Original Account Number is material because without it, a consumer cannot verify the chain of custody from the original creditor to the debt buyer. This creates a risk of duplicate reporting, mistaken identity, or reporting of debts that do not belong to the consumer. The Consumer Financial Protection Bureau recognizes that debt buyer accounts must be verifiable to the original creditor account to ensure accurate credit reporting. The third hard inaccuracy involves Metro 2 Field 6 which governs Account Type classification. The tradeline reports Account Type as Open Account which is incorrect for a collection account. Open Account under Metro 2 Code O is designated for revolving credit accounts with no specific term, not for debt buyer collection accounts. Portfolio Recovery Associates is a debt buyer and this account should be classified as either Collection Account using Metro 2 Code Y or Purchased Receivable using Metro 2 Code 2A. The misclassification of Account Type affects credit scoring algorithms that weight account types differently and misrepresents the nature of the tradeline. The fourth hard inaccuracy involves Metro 2 Field 5 which governs Portfolio Type or Loan Type. The tradeline reports Loan Type as FACTORING COMPANY ACCOUNT which is vague and does not identify the nature of the underlying debt. If the original debt was a Capital One credit card, the tradeline should identify the underlying account type as credit card or revolving credit to enable proper credit evaluation. Factoring Company Account describes what Portfolio Recovery Associates does as a business but does not describe what my original obligation was. This vague classification prevents proper credit evaluation and obscures the nature of the debt. The fifth hard inaccuracy involves the complete absence of payment history. The

TransUnion credit report shows NO payment history entries for this collection account. The account was opened June 20, 2023 and last updated June 29, 2025 which is a span of 24 months. During this entire 24-month period, no monthly payment history entries appear on the credit report. Metro 2 requires furnishers to report monthly Account Status in Field 17A for each reporting period. Even collection accounts must show monthly status updates indicating whether the account remains in collection status, whether payments were made, or whether the status changed. The complete absence of payment history for 24 consecutive months indicates either a furnisher reporting failure or a CRA processing failure. Either way, the tradeline is incomplete and unverifiable. The sixth hard inaccuracy involves the undocumented chain of custody between the original creditor and the debt buyer. Based on the implied DOFD of approximately September 2022 and the Portfolio Recovery Associates account opening date of June 20, 2023, there is a 9-month gap where the debt's custody is undocumented. During this period, the debt may have been held by Capital One, sold to one or more intermediate debt buyers, or processed through collection agencies. This gap raises questions about the chain of title and whether the DOFD was properly transferred per Metro 2 Exhibit 9 requirements. Under 15 U.S.C. § 1681e(b), consumer reporting agencies must follow reasonable procedures to assure maximum possible accuracy. The missing DOFD display, missing Original Account Number, incorrect Account Type classification, vague Loan Type classification, 24 months of missing payment history, and undocumented chain of custody demonstrate that TransUnion's procedures are inadequate to assure maximum possible accuracy as required by statute. I request that TransUnion conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a) addressing each Metro 2 field violation identified in this complaint. I request that TransUnion display the explicit Date of First Delinquency on this tradeline to enable consumer verification rather than only showing the removal date. I request investigation of the 2-month cross-bureau discrepancy between TransUnion showing September 2029 removal and Equifax showing July 2029 removal for the same account. I request that TransUnion require Portfolio Recovery Associates to provide the Original Account Number from Capital One per Metro 2 Field 31 requirements. I request correction of the Account Type from Open Account to the appropriate collection or purchased receivable classification. I request correction of the Loan Type to identify the underlying debt type rather than the vague Factoring Company Account classification. I request that TransUnion provide or require the furnisher to provide 24 months of missing payment history or explain the complete data gap. If these Metro 2 field violations cannot be verified and corrected with supporting documentation from Portfolio Recovery Associates and Capital One, I request deletion of this tradeline under 15 U.S.C. § 1681i(a)(5)(A) which requires deletion of information that is inaccurate, incomplete, or cannot be verified. I am attaching my TransUnion credit report dated July 17, 2025 and a detailed Metro 2 Technical Audit documenting each field-level violation as supporting documentation.

**ATTACHMENTS**

| DiYana back of social.jpg (308.5 KB) | DiYana_October_2025_Statement_Chime.pdf (58 KB) | Diyana Mathis TransUnion Credit Report.pdf (1.3 MB) | DIyana Social security .jpg (304.8 KB) | Diyana (front of license).jpg (239.2 KB) | Back of license).jpg (182.6 KB) | DIYANA_MATHIS_TRANS (243.8 KB) |

View full complaint ⊕

## ✓ Sent to company

**STATUS**

Sent to company on 12/26/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✓ Company still working

**STATUS**

Company response is in progress as of 12/27/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We received your complaint about the items in your credit report, and apologize for any difficulty you may have experienced. We are currently reviewing your complaint along with the information you previously submitted regarding this issue. We will follow-up with you within sixty (60) days from the date you submitted your request.

2/27/26, 9:24 PM                                                        Complaint Detail

**ⓘ  Litigation involved**

STATUS

Company responded there
is litigation involved on
1/26/2026

The company let us know it is unable to respond because your complaint involves the same issues raised in pending or prior
litigation.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

2/27/26, 9:25 PM                                                                    Complaint Detail

 An official website of the United States Government

  Consumer Financial
                      Protection Bureau
                                          (https://www.consumerfinance.gov/)                    Start a new complaint

‹ All complaints (.)

## 251227-27213448

CLOSED

✓  **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/26/2025 | Credit reporting or other personal consumer reports | Incorrect information on your report |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am filing this complaint against TransUnion for reporting six hard inquiries on my credit report that either lack a documented permissible purpose under the Fair Credit Reporting Act or cannot be verified as legitimately authorized by me. This information appears on my TransUnion credit report dated July 17, 2025, File Number 461640641. I am disputing these inquiries under 15 U.S.C. § 1681i(a) and request that TransUnion conduct a reasonable reinvestigation and require each inquiring entity to provide documentation proving both a valid permissible purpose certified at the time of inquiry and my written authorization for the credit pull. The six hard inquiries at issue are Capital One inquired on May 19, 2024 with no permissible purpose shown, Family Security CU inquired on December 29, 2023 with no permissible purpose shown, First Premier Bank inquired on December 27, 2023 with no permissible purpose shown, Ally Financial inquired on November 30, 2023 with no permissible purpose shown, Huntington Bank inquired on November 30, 2023 with no permissible purpose shown, and NCCPerkins Motor Plex inquired on November 30, 2023 with permissible purpose shown as Credit Transaction. The first category of violation involves five inquiries that do not display any permissible purpose on the credit report. Under 15 U.S.C. § 1681b(a), a consumer reporting agency may furnish a consumer report only under specific permissible purposes enumerated in the statute. These include court orders, credit transactions initiated by the consumer, employment purposes with consumer consent, insurance underwriting, legitimate business transactions, and account review. Under 15 U.S.C. § 1681b(f), a person shall not use or obtain a consumer report for any purpose unless the purpose is certified to the consumer reporting agency. The Capital One, Family Security CU, First Premier Bank, Ally Financial, and Huntington Bank inquiries show no permissible purpose whatsoever on my credit report. Only NCCPerkins Motor Plex displays a permissible purpose of Credit Transaction. The absence of any permissible purpose on five of six inquiries indicates either that no valid purpose was certified at the time of inquiry or that TransUnion failed to record and display this required information. Either situation represents a violation of the FCRA and renders these inquiries unverifiable. The Consumer Financial Protection Bureau recognizes that every hard inquiry must be accompanied by a specific documented permissible purpose and that consumers have the right to dispute inquiries that lack proper authorization or a valid stated purpose. The second category of violation involves three inquiries that occurred on the same day in a pattern consistent with dealer shotgunning. The Ally Financial, Huntington Bank, and NCCPerkins Motor Plex inquiries all occurred on November 30, 2023. NCCPerkins Motor Plex is an auto dealership located at 30 Keystone Dr, Mayfield, KY 42066. Ally Financial is an auto lender. This pattern is consistent with dealer shotgunning where an auto dealership submits a consumer's credit application to multiple lenders simultaneously without obtaining explicit authorization for each individual credit pull. Under FCRA, each lender that pulls a credit report must have independent authorization. A single signature on a dealer application does not necessarily authorize unlimited credit pulls to unlimited lenders. I did not authorize NCCPerkins Motor Plex to submit my credit application to multiple lenders. I do not have any account with Ally Financial, Huntington Bank, or NCCPerkins Motor Plex. No auto loan resulted from any of these three same-day inquiries. The third category of violation involves the Capital One inquiry which presents a timing anomaly. The Capital One hard inquiry occurred on May 19, 2024. However, my credit report shows a Portfolio Recovery Associates collection account with Original Creditor listed as Capital One N A that was opened on June 20, 2023. This means Capital One's debt had already been charged off and sold to Portfolio Recovery Associates nearly 11 months BEFORE the Capital One inquiry appeared on my credit report. If Capital One had already charged off my account and sold the debt to a debt buyer by June 2023, Capital One had no active account relationship with me that would justify a credit pull in May 2024. I did not apply for a new Capital One account in May 2024. I do not have any active Capital One account. This inquiry appears to have been made without a valid permissible purpose or without my

authorization. The fourth category of violation involves the complete absence of resulting accounts from any of the six inquiries. None of the six disputed inquiries resulted in an opened account appearing on my credit file. My only accounts are Chime/Stride Bank which I opened in May 2024 with no corresponding Chime inquiry on file, Department of Education/Nelnet student loans which do not require hard credit pulls, and the Portfolio Recovery Associates collection which collections do not create inquiry records. I do not have any account with Capital One, Family Security Credit Union, First Premier Bank, Ally Financial, Huntington Bank, or NCCPerkins Motor Plex. While a denied credit application can still result in a legitimate hard inquiry, the complete absence of any resulting accounts across all six inquiries raises substantial questions about whether valid authorization existed for these credit pulls. Under 15 U.S.C. § 1681i(a), when a consumer disputes the accuracy or completeness of information in their credit file, the consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. Under 15 U.S.C. § 1681i(a)(5)(A), if after reinvestigation the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency must promptly delete that item of information from the file. An inquiry without a documented permissible purpose is facially deficient under FCRA. An inquiry without verifiable consumer authorization is unverifiable and must be deleted. I request that TransUnion conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a) for each of the six hard inquiries identified in this dispute. I request that TransUnion require Capital One, Family Security CU, First Premier Bank, Ally Financial, and Huntington Bank to provide documentation of the permissible purpose that was certified at the time of each inquiry since none of these inquiries display a permissible purpose on my credit report. I request that TransUnion require all six inquiring entities to provide proof that I submitted a written application or otherwise authorized each credit pull. I request that TransUnion specifically investigate the Capital One inquiry timing anomaly given that the inquiry occurred 11 months after Capital One's debt was already placed with Portfolio Recovery Associates. I request that TransUnion specifically investigate the November 30, 2023 same-day inquiry cluster from Ally Financial, Huntington Bank, and NCCPerkins Motor Plex to determine whether I authorized each lender individually to pull my credit or whether these pulls resulted from unauthorized dealer shotgunning. For any inquiry where the inquiring entity cannot provide documentation proving both a valid permissible purpose certified at the time of inquiry AND my written authorization or application, I request immediate deletion of that inquiry under 15 U.S.C. § 1681i(a)(5)(A). I am attaching my TransUnion credit report dated July 17, 2025 and a detailed FCRA Section 1681b Technical Audit documenting each violation as supporting documentation.

**ATTACHMENTS**

DIyana Social security .jpg (304.8 KB)

Diyana (front of license).jpg (239.2 KB)

DiYana_October_2025_Statement _Chime.pdf (58 KB)

Diyana Mathis TransUnion Credit Report.pdf (1.3 MB)

DIYANA_MATHIS_TRANSUNION_HARD_INQUIRY_AUDIT.docx.pdf (250.7 KB)

View full complaint ⊖

## ✓ Sent to company

**STATUS**
Sent to company on 12/26/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✓ Company still working

**STATUS**
Company response is in progress as of 12/27/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We received your complaint about the items in your credit report, and apologize for any difficulty you may have experienced. We are currently reviewing your complaint along with the information you previously submitted regarding this issue. We will follow-up with you within sixty (60) days from the date you submitted your request.

2/27/26, 9:25 PM                                                                 Complaint Detail

## ✓ Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 1/28/2026 | Closed with explanation |

### Company's Response

After careful review, we have determined the information submitted in the portal included a dispute of information appearing on your credit report. In response to your dispute regarding the inquiries appearing on your report, we sent you a letter to explain inquiries remain on your report for two years and if you believe it was made without permissible purpose, you may wish contact the company directly.

## ⊙ Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 1/28/2026 | 3/29/2026 |

### Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

Submit your feedback

## ✕ Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government