IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DIYANA MATHIS,<br>  Plaintiff, | )<br>) Case No. 3:25-cv-00___-RAH-CWB<br>) |
| v. | )<br>) |
| TRANS UNION LLC,<br>  Defendant. | )<br>)<br>) |

# EXHIBIT E

## DECLARATION OF DIYANA MATHIS
## IN SUPPORT OF SECOND AMENDED COMPLAINT

Sworn declaration under 28 U.S.C. 1746

Sets forth Plaintiff's personal knowledge of:
- Fabricated payment dates on federal student loan tradelines
- Nelnet servicer records confirming zero payments ever made
- Trans Union's failure to correct after four CFPB disputes
- False delinquency codes on government-discharged accounts
- Emotional distress and migration to subprime lenders

8 pages

*Filed pursuant to the Court's Order dated February 19, 2026 (Doc. 32)*

# DECLARATION OF DIYANA MATHIS

Pursuant to 28 U.S.C. § 1746

I, Diyana Mathis, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my knowledge, information, and belief:

## I. Professional Background and Qualifications

I am a Drug and Alcohol Abuse Counselor and Quality Assurance Department Team Lead at Conversion Rep LLC, where I have worked since October 4, 2021. In less than four years, I have been promoted four times:

(a) Admissions Support Representative (October 2021);

(b) Quality Assurance Analyst Shift Lead;

(c) Admissions Support Assistant Team Lead; and

(d) Quality Assurance Department Team Lead (July 7, 2025 – present).

My professional responsibilities include strategic scheduling, dispute resolution, quality assurance monitoring, evaluator oversight, team communications, training programs, and performance tracking. Every day, I work with individuals facing the most difficult moments of their lives—people struggling with addiction, people in crisis, people who need someone to believe in them. My work requires the professional capacity to recognize emotional distress, assess psychological states, distinguish genuine crisis from performative behavior, and respond with appropriate intervention. These are the same competencies I apply to the assessment of my own emotional condition as set forth in Section IV below.

## II. Educational and Career Aspirations

My goal is to one day open a family-owned Drug and Alcohol Abuse Rehabilitation Center dedicated to healing various afflictions. That goal requires financing. Trans Union's defective credit reporting threatens not just my present, but my future—and the future of every person that rehabilitation center could help.

I am currently enrolled in coursework to further my counseling credentials. My professional trajectory—four promotions in four years—reflects a sustained commitment to growth in a field dedicated to helping others recover. Trans Union's fabricated credit data has not only suppressed my current creditworthiness but has jeopardized the financing that would be required to achieve my long-term professional goals.

## III. Financial Harm

Trans Union reported fabricated "Last Payment Made: 08/08/2023" dates on all three of my student loan tradelines while simultaneously reporting $0 in every payment field. The federal loan servicer, Nelnet, has confirmed that no payments have ever been made on any of my accounts—four loans were discharged by the United States Government ("Paid In Full By Claim") and three are in no-pay hardship forbearance. Trans Union reported me as 90-to-120 days delinquent on accounts that the federal government and the loan servicer confirm required no payment.

Trans Union disseminated these fabricated reports to at least six creditors between November 2023 and May 2024—NCC Perkins Motor Plex, Huntington Bank, Ally Financial, First Premier Bank, Family Security Credit Union, and Capital One. On November 30, 2023, three of those creditors simultaneously accessed my Trans Union report on the same day, and I was denied financing for a vehicle.

The vehicle denial is representative of the broader harm. I reside with my family at 404 Brown Street, Tuskegee, Alabama 36083. Transportation is essential in rural Alabama—there is no public transit. The inability to secure vehicle financing at reasonable terms has compounded every other aspect of the financial harm caused by Trans Union's fabricated reporting.

## IV. Emotional Distress and Psychological Harm

I work every day with individuals experiencing the worst moments of their lives. I am trained to recognize emotional distress. I am trained to distinguish genuine suffering from performative behavior. I apply that same professional framework to the assessment of my own condition.

Since discovering the scope of Trans Union's fabricated reporting on my consumer file, I have experienced persistent and severe emotional distress, including:

(a) Anxiety about my financial future and my ability to achieve the professional goals I have worked toward for four years. The realization that a credit bureau was reporting fabricated data—data contradicted by the federal loan servicer's own records—has undermined my confidence in the systems I was taught to trust;

(b) Frustration and anger upon learning that Trans Union reported me as delinquent on student loans that have been discharged by the United States Government. These loans do not exist as active obligations. The government paid them. Trans Union reported me as 120 days behind on debts the government already satisfied;

(c) Persistent sleep disruption, including difficulty initiating sleep and waking with anxiety about credit-related matters. In my professional training as a counselor, I recognize sleep disruption as among the most reliable indicators of sustained emotional harm;

(d) A sense of generational repetition. I watched my mother, my father, and both grandmothers go through financial hardship. I dedicated my career to helping others overcome crisis precisely because I understood that cycle. The realization that despite my education, my four promotions, and my professional commitment, I am being pulled back into that cycle by fabricated credit data—data I did not cause and cannot control—has been a source of sustained grief;

(e) The compounding effect of watching my family suffer alongside me. I live in the same household as Hope R. Miller and Raheem Sanders. I have witnessed their emotional deterioration. I have seen Hope's tears after twenty-three years of serving patients. I have watched Raheem work through every night for months, losing weight, losing sleep, carrying the litigation burden for all of us. I have watched my father, Diondre Mathis Sr., struggle with the helplessness of seeing his family face the same barriers he spent his career trying to overcome. The harm in this household is not individual—it is collective, and it is compounding.

These symptoms are not transient. They have persisted since I became aware of Trans Union's fabricated data and have intensified as the scope of the harm has become clear—particularly the discovery that Trans Union "verified" the fabricated data as accurate in response to four separate CFPB complaints, while affirmatively declining to correct the errors despite possessing Nelnet servicer records proving no payments were ever made.

## V. Professional Assessment of Own Condition

As a trained Drug and Alcohol Abuse Counselor who works daily with individuals in crisis, I possess professional competency in recognizing emotional distress indicators—both in others and in myself. The behavioral and psychological symptoms I have experienced since discovering Trans Union's fabricated reporting are consistent with the genuine, sustained emotional harm I observe in the individuals I counsel professionally. The distress is not performative. It is not exaggerated. It is the response of a young professional who has dedicated her career to helping others recover from crisis, only to discover that her own financial life has been compromised by fabricated data from an institution she was taught to trust.

Four promotions in four years. A career spent helping people at their lowest. A dream of opening a rehabilitation center to serve my community. Trans Union's fabricated credit data threatens all of it—and it was never necessary. The federal loan servicer's records were available. The payment grid showed $0. The government had discharged the loans. Trans Union reported me as delinquent anyway.

*I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.*

Executed on **03/62** , 2026

At Tuskegee, Macon County, Alabama

**DIYANA MATHIS, Pro Se Plaintiff**

Quality Assurance Department Team Lead

Drug and Alcohol Abuse Counselor

Conversion Rep LLC

# CORROBORATING DECLARATION OF DIONDRE MATHIS SR.

Pursuant to 28 U.S.C. § 1746

I, Diondre Mathis Sr., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my knowledge, information, and belief:

## I. Professional Background

I have spent my career serving vulnerable populations and protecting those who cannot protect themselves. I served as a Special Needs Residential Aide at Bridges of Wisconsin in Milwaukee, working with individuals requiring specialized behavioral support. I served as Correctional Officer and Counselor Supervisor at Dallas County Juvenile Detention Center in Selma, Alabama, under Director Marcus Hannah, a military veteran, overseeing operations at Camp Perry Varner Education and Treatment Facility—the only juvenile facility in Alabama to achieve eight consecutive years of perfect 100% audit scores from the Alabama Department of Youth Services. I served as Youth and Family Counselor at the Brant Center under David Brantley, a military veteran and facility owner. My professional training and experience—spanning special needs care, juvenile corrections, and family counseling—have required me to observe, assess, and document behavioral and emotional changes in individuals under high-stress conditions. I am professionally qualified to identify signs of emotional distress, psychological deterioration, and behavioral changes.

## II. Relationship to Plaintiff and Basis of Observation

Diyana Mathis is my daughter. We reside together at 404 Brown Street, Tuskegee, Alabama 36083, along with other family members. I have observed Diyana on a daily and continuous basis throughout the entire period relevant to this litigation. My observations are not intermittent or occasional—they are the product of sustained, daily, in-home contact with the Plaintiff.

I have watched Diyana build her career from the ground up. She started at Conversion Rep LLC in October 2021 and has been promoted four times in less than four years. She is a young woman who dedicates her professional life to helping people overcome addiction and crisis. She is disciplined, hardworking, and committed to breaking the cycle of financial hardship that I struggled to overcome in my own life. It is from that perspective—as both a professional trained in behavioral assessment and as a father who has watched his daughter's trajectory—that I offer the following observations.

## III. Observations of Plaintiff's Emotional and Psychological Harm

Drawing on my professional training in behavioral assessment and crisis identification, and on my sustained daily personal observation of Diyana Mathis, I have identified the following indicators of genuine, sustained emotional and psychological harm:

**(a) Anxiety and frustration regarding fabricated credit data.** I have observed a marked increase in Diyana's anxiety specifically related to her credit file since she became aware of the fabricated reporting. She has expressed anger and disbelief that Trans Union reported her as delinquent on student loans that the federal government had already discharged. In my professional experience, the combination of anxiety and frustration directed at institutional conduct is a recognized indicator of genuine distress caused by external harm—not a performative response.

**(b) Concern about generational repetition.** Diyana has expressed sustained distress about the possibility that despite her education, her promotions, and her professional commitment, she may be unable to escape the financial hardship she watched her family endure. I recognize this concern intimately—because I spent my career trying to break that cycle for my family. Watching my daughter face the same barriers, caused by fabricated data she did not create, has been among the most painful experiences of my life.

**(c) Sleep disruption.** I have observed changes in Diyana's sleep patterns since the discovery of the fabricated data. In my professional training, sleep disturbance is among the most reliable indicators of sustained emotional harm.

**(d) The collective household burden.** Diyana does not carry this burden alone. She lives in a household with Hope R. Miller, Raheem Sanders, and me. She has witnessed Hope's tears, Raheem's exhaustion, and my own frustration. The emotional harm in this household is not compartmentalized—it is shared, and it is compounding. In my professional experience working with families in crisis, shared household trauma amplifies individual distress in ways that are predictable, recognizable, and severe.

Diyana is not someone who exaggerates her circumstances or seeks sympathy. She is a trained counselor who works with people in crisis every day. She has professional composure. When I observe a change in her emotional baseline—and I have—it carries significance precisely because she is someone who maintains composure under pressure as a matter of professional practice. The distress I have observed is genuine, sustained, and materially different from the emotional baseline I have known in my daughter throughout her adult life.

### IV. Professional Assessment

Based on my professional training in behavioral assessment across three distinct disciplines—special needs care, juvenile corrections, and family counseling—and validated by eight consecutive years of perfect 100% audit scores from the Alabama Department of Youth Services, I attest to the following:

(a) The emotional and psychological harm Diyana Mathis has suffered as a result of Trans Union's fabricated credit reporting is real, substantial, and ongoing.

(b) The harm is not exaggerated, performative, or contrived.

(c) The behavioral indicators I have observed—increased anxiety, frustration directed at institutional conduct, sleep disruption, concern about generational repetition, and the compounding effect of shared household distress—are consistent with genuine, chronic emotional distress caused by external institutional harm.

(d) The harm has been compounded by the fact that the fabricated data relates to student loans that were discharged by the United States Government—a circumstance that intensifies the sense of injustice and institutional failure.

(e) As a father, I attest that watching my daughter face the same financial barriers I spent my career trying to overcome—barriers caused by fabricated data from an institution entrusted with the accuracy of her financial identity—represents a harm that extends beyond Diyana to the entire family structure I have worked to build.

*I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.*

Executed on **March 2**, 2026
At Tuskegee, Macon County, Alabama

**DIONDRE MATHIS SR.**
Corroborating Witness — Father of Plaintiff
Former Correctional Officer & Counselor Supervisor
Dallas County Juvenile Detention Center, Selma, Alabama
Youth and Family Counselor, Brant Center
Special Needs Residential Aide, Bridges of Wisconsin